IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION,<br>As Receiver of the Columbian Bank & Trust Company,<br><br>Plaintiff,<br><br>vs.<br><br>CARL L. McCAFFREE, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 11-CV-2447 JAR/KGS<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS CARL McCAFFREE'S AND SAM McCAFFREE'S
### REPLY IN SUPPORT OF THEIR MOTION TO COMPEL

It is true that Plaintiff FDIC-R has produced to Defendants a lot of documents in this case—likely more than a million pages. It is also true that counsel for Plaintiff has made a conscientious effort to work with Defendants, and, as a result, Plaintiff has turned over additional documents, including some from third parties. But, to put it simply, Plaintiff's efforts still fall far short of the discovery obligations it has to these Defendants from whom it seeks nearly $59 million dollars. The critical fact is that now, more than five months after Defendants' opening discovery was served, Plaintiff has not produced many of the most significant documents to this case.

This case is about whether the defendant directors of Columbian Bank & Trust Company ("Columbian" or "Bank") made the loans identified in the Amended Complaint in good faith or whether they are guilty of grossly negligent lending practices that harmed the Bank they built. Unquestionably, given Plaintiff's allegations, the most significant documents in this case are the full and complete loan files, loan packages presented to the Board of Directors, and underwriting materials for each of the loans in question. Yet, Plaintiff has been unwilling or unable (it is still unclear which) to precisely identify or produce complete and accurate copies of those files and

packages. Plaintiff argues that it fulfilled its discovery obligations by identifying scant documents it claims amount to the loan files, when Defendants have demonstrated they clearly are not, and by providing huge amounts of Bank documents containing certain search terms. It contends that Defendants must piece together or "reassemble" the Bank's operating files. Beyond the extremely cumbersome and virtually impossible nature of what Plaintiff is suggesting, in a case where the allegations of negligence, gross negligence, and breach of fiduciary duty are based upon documentation and analysis purportedly "missing" from the underwriting process, it is simply not Defendants' job to recreate the loan files, loan packages, and underwriting materials maintained by the Bank. *See* Doc. 81, Memorandum In Support Of Defendants' Motion To Compel ("MIS of Motion to Compel") at pp. 3-5 (listing allegations in the Amended Complaint).

Plaintiff also contends that this Motion was "unnecessary" because it had "already agreed before Defendants filed their motion to provide supplemental answers and document responses." Doc. 90, Plaintiff's Response to Defendants' Motion To Compel ("Resp.") at p. 2. But Defendants were up against an already twice-extended deadline of August 21, 2012 to file any motion to compel on these subjects, and thus faced the risk of losing altogether the ability to compel the necessary production. Plaintiff neglected to inform the Court that Defendants tried to negotiate a date-certain for Plaintiff's production to obviate the need for the instant motion, but Plaintiff refused. Doc. 82-7, August 14, 2012 e-mail from A. Harse and August 15, 2012 e-mail from C. Getto (stating, "[w]e can't guarantee that all the documents defendants have requested will be uploaded to Relativity by August 20"). It is now clear that the Motion was not only warranted but necessary, as Defendants are still waiting for virtually all of the long-promised documents and information. Although Plaintiff could have mooted much of this Motion simply

by doing what it promised to do seven weeks ago, it has not. It has produced some, but not all, responsive documents from Citizens Bank and it has produced documents obtained from other third parties. All of its other obligations remain outstanding. Of those things that Plaintiff agreed to do, it must still supplement its responses to Interrogatories 10 and 11 and RFPs 26, 27, 28, 30, 76, and 88, produce documents responsive to RFPs 81 and 84 (and any additional documents it has obtained from third parties, in response to RFP 89), and provide a log for any responsive documents being withheld on the grounds of privilege. Plaintiff's inaction in this regard only highlights the propriety of this Motion.

Defendants do not have an open-ended schedule that permits them to wait an indefinite period for Plaintiff to produce responsive information. Defendants have critical deadlines upcoming, including deadlines for disclosing expert reports and making their comparative fault designation—not to mention the close of discovery. Due to the obtrusive and ongoing delays by Plaintiff, Defendants have not been able to take a single deposition. For the reasons discussed below, and as more fully discussed in the Memorandum In Support, Doc. 81, Defendants seek an order compelling Plaintiff to obtain all documents responsive to their First RFPs from Citizens Bank,[1] to precisely identify and produce the loan packages, loan files, and underwriting materials as they were kept in the usual course of business, to provide the other categories of documents requested in Defendant's Motion to Compel, and to supplement its responses to certain Interrogatories and RFPs and provide a privilege log as it previously agreed to do.

### A. Plaintiff Must Immediately Supplement Its Responses And Produce The Documents As It Long Ago Agreed To Do

---

[1] On or about September 14, 2012, Plaintiff produced some documents it obtained from Citizens Bank. Several days later, however, Plaintiff conceded that still other responsive documents from Citizens Bank are yet to be produced to Defendants. Review of the Citizens Bank documents that have been provided show they are limited and incomplete.

Several of the issues in Defendants' Motion to Compel are easily resolved. Plaintiff concedes that it has agreed, and therefore has a duty, to (1) supplement its responses to Interrogatories 10 and 11, (2) supplement its responses to RFPs 26, 27, 28, 30, 76, 88, (3) produce documents responsive to RFPs 81, 84, and 89, and (4) produce a log for any documents withheld on the ground of privilege. *See* Doc. 90, Resp. at pp. 15-17. It has been nearly seven weeks since Plaintiff agreed to do this. *See* Doc. 82-7. The only progress Plaintiff has made toward meeting its agreed-to obligations in that time is producing some, but not all, documents responsive to RFP 89, which seeks all documents Plaintiff has obtained from third parties related to the allegations in the Amended Complaint.[2] Doc. 82-2. It is clear that Plaintiff has no intention of supplementing its responses in a timely fashion without Court intervention. Defendants therefore ask the Court to enter an order compelling Plaintiff to supplement its responses and produce documents as stated in this paragraph within five days of the Court's order on the Motion to Compel. *See Government Benefits Analysts, Inc. v. Gradient Ins. Brokerages, Inc.*, 2012 WL 3238082, 9 (D. Kan. 2012) (compelling supplementation of an interrogatory the plaintiff already agreed to supplement, which plaintiff had yet to do); *Herrmann v. Rain Link, Inc.*, 2012 WL 1207232, 12 (D. Kan. 2012) (same).

The remaining issues in the Motion to Compel concern Plaintiff's production of the loan packages, loan files, and underwriting materials, and any responsive documents available from Citizens Bank.

---

[2] Plaintiff's protestations to the contrary, Defendants have not asked for an Order requiring Plaintiffs to *obtain* documents from third parties. It is doubtful such a request would be proper. *But see infra* n.4. Defendants did ask, however, that Plaintiff *produce* all documents obtained from third parties. Doc. 82-2, RFP 89. Plaintiff raised no objection to this request. Thus, it was—and continues to be—obligated by the Rules of Civil Procedure to produce all documents responsive to this request.

### B. Plaintiff Must Immediately Pinpoint And Produce The Relevant Files, Or Otherwise Fully And Completely State Their Disposition

There are no fewer than 23 allegations in the Amended Complaint related to the contents of various files—the loan packages (*i.e.*, Loan Approval Requests and associated documents that went the Board when a loan officer requested approval of a new loan, a renewal of a loan, or a loan consolidation), the loan files, and underwriting materials. Doc. 81, MIS of Motion to Compel at pp. 3-5 (listing allegations). Defendants are entitled to discover the contents of the loan packages, loan files, and underwriting materials as they actually existed at the Bank during its operation, not some hodge-podge of documents Plaintiff has thrown together. *See* Doc. 82-4, July 20, 2012 e-mail from C. Getto & July 27, 2012 e-mail from C. Getto (indicating that Plaintiff caused the loan files to be captured at closing). Defendants requested copies of those files long ago—on April 13, 2012. Doc. 49 (Certificate of Service of Discovery).

The importance of this distinction requests cannot be understated. By way of illustration only, in the Amended Complaint, Plaintiff alleges that the Jam Land loan file did not contain an appraisal for Columbian of the property that served as collateral for the $2.6 million loan. Amended Compl. ¶ 70. Indeed, the purported "loan file" identified by Plaintiff does not contain a complete appraisal of the property. But, the loan file recently produced by the buyer of the loan does contain a complete, 124-page appraisal for the property, dated October 12, 2005 (*i.e.*, before the loan was approved by the Bank)—and it values the property at $13.6 million. The cover of the appraisal prominently discloses that it was "for Columbian Band and Trust Co." *Id.* It is a dubious suggestion that the buyer of a loan would possess a copy of this appraisal but that it would not have been in the Bank's own loan files.

In addition, the Amended Complaint states that the repayment plan in the LAR for the All American Plazas loan—a "buy out from Able Energy, Inc."—was "speculative" and that the

5

LAR "did not contain any meaningful financial information from Able Energy, Inc." Amended Compl. ¶ 73. The purported "loan file" identified by Plaintiff contains only three overview pages on Able Energy. In contrast, the file recently obtained from Citizens Bank, which appears to be an original Columbian Bank file, contains more than 30 pages of information on Able Energy that pre-date the Bank's approval of the first loan to All American Plazas, including its consolidated financial statements contained in its public filings and a memorandum from Able Energy to Defendant Helvey discussing its proposed acquisition of All American Plazas.

These are but two examples (in addition to those discussed in the Memorandum In Support, *see* Doc. 81, MIS of Motion to Compel at pp. 81-2) that demonstrate beyond dispute that the documents Plaintiff identified as the loan packages and loan files are not the files as they existed in the Bank (and, notably, Plaintiff does not now dispute this fact). And, more importantly, it demonstrates that, unless Defendants obtain the original files as they existed in the ordinary course of business at the Bank, continued litigation against them is untenable and Defendants' ability to defend against the allegations are hampered. It bears repeating here what was already stated in Defendants' Memorandum in Support—specifically, that this case is unique in that Defendants are forced to rely on their adversary for production of the documents they need to defend themselves of the substantial claims raised. For these reasons, shortly after they received Plaintiff's discovery responses, Defendants began pressing Plaintiff to identify and produce for inspection the actual files.

As early as the parties' planning conference in January 2012—and for months thereafter—Plaintiff represented that it had copied all of the hardcopy documents at the Bank on the day it closed and that it produced entire, unbroken files, if any document in a file "hit" on an agreed-upon search term. *See* Doc. 81, MIS of Motion to Compel at p. 10 n.5 (noting many of

Plaintiff's representations that it copied all of the Bank's hardcopy documents at closing); Doc. 82, Conrad Decl. ¶¶ 15-16. Thus, there was no doubt (in Defendants' minds) that the relevant files existed *somewhere* in the "vast database" of documents, Plaintiff just had to identify them. *See* Doc. 90, Resp. at p. 6 (characterizing the database of documents as "vast").

Defendants did not learn until August 8, 2012 at the meet-and-confer telephone conference[3] that Plaintiff selectively copied only <u>some</u> of the documents from the Bank at closing and that the index Plaintiff had provided and touted as an inventory of the Bank's documents was not actually a complete inventory. Defendants also learned that, to that point, Plaintiff had made no effort to collect any Columbian documents from Citizens Bank, even though many of the documents Defendants had requested were likely there and Plaintiff had a duty to retrieve them since it maintains access to and control over Columbian's documents there.[4] Plaintiff does not dispute either of these points in its Response.

Rather, Plaintiff tries to distract the Court by characterizing its discovery efforts as Herculean in that, since Defendants brought these issues to light, it has "endeavor[ed] to obtain copies of the loan files from the purchasers of the target loans." Doc. 90, Resp. at p. 12. Perhaps Plaintiff's realization that it has fallen woefully short of its document collection and preservation duties explains why Plaintiff has sought to remedy its negligence by taking the initiative to request that the purchasers of the loans provide it their loan files. Though producing

---

[3] Plaintiff is correct that the declaration of Lyndsey J. Conrad mistakenly stated that Herbert Smith participated on the call. *See* Doc. 90, Resp. at p. 13 n.5.

[4] In stating that Defendants never asked Plaintiff to obtain documents from Citizens Bank and that it has no obligation to do so, *see* Doc. 90, Resp. at pp. 12-13, Plaintiff ignores Federal Rule of Civil Procedure 34(a)(1), the authorities interpreting it, and the section of the Motion to Compel explaining it. *See* Doc. 81, MIS of Motion to Compel at pp. 13-14, 16-17. In short, Plaintiff was (and is) required to obtain documents responsive to all of Defendants' RFPs from Citizens Bank because Plaintiff has the legal right to obtain those documents on demand. *Id.*

7

copies of whatever it obtains from third parties is required, *see supra* p. 4 n.2, it is not sufficient to discharge its discovery obligation because Plaintiff might not have given the purchasers the entirety of Columbian's loan files or the purchasers might not have retained all of Columbian's documents in their loan files. Evidence of this type exists, as the purchaser of one loan produced a loan file back to Plaintiff that did not contain a single underwriting document pre-dating the original loan.

Plaintiff also contends that it is fully in compliance with the parties' agreement regarding discovery because it has run computer-assisted searches for certain terms selected by the parties and populated Relativity with the documents that "hit" on those terms, organized by search term. But Defendants never agreed that Plaintiff could fulfill its discovery obligations simply by running search terms against documents it amassed and loading "hits" into Relativity. Such an agreement is not reflected in either the Report of the Parties' Planning Conference or the original Scheduling Order (Doc. 35), nor is it consistent with the parties' conduct in discovery. Indeed, if the parties had agreed that Plaintiff could discharge its discovery obligations simply by running search terms, there would have been no reason for Defendants to propound document requests. But they did. Not only did Plaintiff respond to them without objection, it produced many categories of documents without regard to the presence of search terms. Thus, when Defendants asked Plaintiff to identify and produce the loan packages, loan files, and underwriting materials, ***it was required to produce those specific files***, not simply documents within them that happened to contain a search term.

Even if Defendants had agreed to such a procedure, the agreement would be void due to the fact that it would have been based on misinformation provided by Plaintiff concerning the contents and organization of the Relativity database. Plaintiff represented that it had copied and

scanned *all* of the Bank's hardcopy documents and that if a document "hit" on a search term, the entire file in which the document was located would be produced. If these representations were true, all of the relevant files would be available and easily located in the database (and, at the same time, there would have been no need for Defendants to subpoena a single document from any party who purchased a loan from Plaintiff because all of the documents would be duplicative of documents Plaintiff already had—and already produced to Defendants).

The fact that some DocStar documents have been made available in Relativity does not absolve Plaintiff of its obligation to produce the hardcopy file. It is undisputed that DocStar's loan files were incomplete versions of the hardcopy documents available in the Bank. *See* Doc. 82-10, McCaffree Decl. at ¶18. Furthermore, Plaintiff did not preserve DocStar's foldering system, so the documents that are available from DocStar are simply a disorganized mass. Plaintiff told Defendants that the only way they can even attempt to reproduce the DocStar loan files is by running search terms against those documents identified as coming from DocStar.[5] Doc. 82-4, July 11, 2012 e-mail from C. Getto.

For similar reasons, providing access to *all* of DocStar's documents, not just those that hit on search terms, and offering to allow Defendants to select boxes of documents from an

---

[5] In any event, it is still unclear to Defendants the extent to which Plaintiff's representations about documents identified as coming from DocStar is even accurate. Although Plaintiff has repeatedly told Defendants that it "captured" the documents the Bank maintained on DocStar at "closing" and then terminated the contract with DocStar, *see* Doc. 82-4, July 11, 2012 e-mail from C. Getto, Defendants recently uncovered evidence that many of the documents identified as coming from DocStar are FDIC-generated documents created *after* the closing of the Bank, sometimes as late as February 2009. This makes Plaintiff's representations about its use and maintenance of DocStar or the source of documents in Relativity misleading. The only explanation thus far offered for this inconsistency is Plaintiff's counsel's best guess that "[i]t appears that the FDIC, after Columbian closed, continued loading at least some documents into DocStar." In addition, Plaintiff's counsel recently informed Defendants that Citizens Bank maintains DocStar and that it contains documents pertaining to the relevant loans or borrowers, adding to the uncertainty of Plaintiff's proffered explanation.

inventory that provides descriptions of documents or files with varying degrees of specificity, as Plaintiff has offered to do, *see* Doc. 90, Resp. at pp. 7, 10 n.3, would provide no benefit to Defendants and would, in fact, be a hindrance.  Plaintiff's seemingly gratuitous gestures are just another way for Plaintiff to "document dump" on Defendants and improperly shift the burden and expense of complying with its discovery obligations.  Both DocStar and the Bank's hardcopy documents contained loan files for possibly thousands of loans wholly unrelated to those at issue in the Amended Complaint, as well as other documents and data relevant to the Bank's business but irrelevant to the instant litigation.  Defendants should not be required to sift through irrelevant documents and guess as to whether relevant files are present somewhere.  If they exist, Plaintiff should be compelled to produce them.

In short, if a copy of any of the relevant files exists in Relativity, Plaintiff must pinpoint its precise location.  If a copy of any file is not in Relativity, but is somewhere in the 110 boxes of documents Plaintiff inventoried, held at Citizens Bank, or otherwise possessed or controlled by Plaintiff, Plaintiff must produce it.  *See* Doc. 81, MIS of Motion to Compel at p. 18 (explaining that producing a copy of a file requires "the producing party to reproduce those <u>file folders</u> and place <u>the appropriate documents in them</u> so that the production replicates the manner in which they were originally kept.").  If a file was, but no longer is, in Plaintiff's custody or subject to Plaintiff's control, Plaintiff should be required to state the disposition of the file, including where it currently is located and the identity of the person or entity that has custody or control.  Plaintiff has indicated that it transmitted the original loan files to the buyers of the loans.  There is at least some evidence, however, that Plaintiff selectively chose documents from the files to give to the buyers.  *See supra* p. 7 (noting that the purchaser produced a loan file that did not contain a single underwriting document pre-dating the original loan).  If this is the case,

10

Plaintiff should be required to explain which documents were relinquished and which were retained, destroyed, or otherwise disposed of.  Only with this information can Defendants begin to understand what steps they must take to prevent further prejudice to their defense.

In addition, Defendants seek an order compelling Plaintiff to produce for inspection and copying any original loan file Plaintiff continues to have control over.  In this regard, it is notable that in its Response, Plaintiff fails to address the location of the original Lockhaven Estates loan file, which, according to Plaintiff's interrogatory responses, has yet to be sold.  *See* Doc. 81, MIS of Motion to Compel at p. 22.  At a bare minimum, Plaintiff should be compelled to produce that file for inspection and copying.

### C. Plaintiff's Response Raises More Questions Than Answers And Plaintiff Should Supplement Its Discovery Responses As Necessary

Plaintiff's Response to Defendants' Motion To Compel has raised additional questions about the veracity and completeness of Plaintiff's responses to other discovery requests.

Defendants' Interrogatory 3 asked Plaintiff to identify each document comprising the LAR (including attachments thereto) presented to the Board of Directors for approval of each loan at issue in the Complaint.  Doc. 85-1.  This Interrogatory is relevant and necessary given the sheer number of allegations in the Amended Complaint where the Plaintiff represents what the LARs did and did not contain.  Doc. 81, MIS of Motion to Compel at pp. 3-5 (listing allegations in the Complaint where Plaintiff stated as a matter of fact what was contained in the LAR or loan package).

Plaintiff answered that 231 pages were presented to the Board for approval of all of the loans, renewals, and consolidations.  Ex. 85-1.  As explained in Defendants' Motion to Compel, this was far from the truth.  Doc. 81, MIS of Motion to Compel at pp. 8-9.  Now, Plaintiff incredibly argues that, although the LARs specifically list at least some of their attachments,

11

there is "no proof that these documents were actually attached to the LARs when Defendants approved the target loans," or that the attachments might have been removed prior to the time the Bank closed.[6]  Doc. 90, Resp. at p. 13.  This, apparently, is Plaintiff's way of admitting that it has no idea what information the Board possessed at the time it approved or renewed the loans at issue in the Amended Complaint.  This being the case, it should be required to state as much in a supplemental response to Interrogatory 3.

In response to Interrogatory 12, which asked Plaintiff to identify "all loan collection or sale efforts by the FDIC," Plaintiff suggested that a third party called DebtX was responsible for selling all of the loans at issue in the Amended Complaint.  Doc. 85-1 at pp. 31-33.  There is no indication in Plaintiff's answer to that Interrogatory that another third party or Plaintiff itself undertook to sell any of the loans.  In its Response to Defendants' Motion to Compel, however, Plaintiff states that it uploaded to Relativity documents furnished to DebtX, "which the FDIC-R engaged to sell *some* of the target loans in this case."  Doc. 90, Resp. at p. 11 (emphasis added).  Although Interrogatory 12 was not at issue in Defendants' Motion to Compel, Plaintiff should be required to supplement its Response to this Interrogatory if necessary to be entirely accurate.

**D. Because Of Plaintiff's Misrepresentations Regarding The Scope Of Its Document Collection And Preservation And Because Plaintiff's Delay In Adequately Responding To Discovery Is Not Substantially Justified, Defendants Are Entitled To Fees And Expenses**

---

[6]  Plaintiff also states that "if these attachments to the LARs were present at the Bank prior to the time it was closed by the OSBC, the documents should be on DocStar." Doc. 90, Resp. at p. 14.  As noted above, however, it is undisputed that DocStar's loan files were incomplete versions of the hardcopy documents available in the Bank.  *See* Doc. 82-10, McCaffree Decl. at ¶18.

Plaintiff has no response at all to the fact there is no LAR for the third loan to 11500, LLC among the documents it identified.  *See* Doc. 81, MIS of Motion to Compel at p. 9; Doc. 82-3.

As Defendants have demonstrated herein and in the Motion to Compel, Plaintiff has not complied in good faith with its discovery obligations, despite its suggestion to the contrary. Representations and conduct by Plaintiff throughout the litigation have caused Defendants to spend unnecessary hours searching for the location and source of relevant documents, a burden made more arduous due to the fact that Plaintiff has maintained unprecedented control over the documents and Defendants' ability to review them.  In fact, Plaintiff disabled features of Relativity that Defendants did not even know about (some, but not all, of them were activated when only Defendants fortuitously learned about them one-by-one and obtained Plaintiff's consent to have them enabled) and suppressed important metadata fields that should not have been suppressed.  *See, e.g.,* Doc. 90, Resp. at p. 6 (noting that Plaintiff's consent was required for Defendants to obtain answers from Lockheed about Relativity); *id.* at p. 8 (noting that Lockheed belatedly activated a feature on Relativity at Plaintiff's request).

Defendants have spent countless hours cobbling together documents that *may* have been in the loan files, including the DocStar loan files, by running search terms—an effort made nearly impossible due to the fact that Plaintiff had suppressed several important metadata fields in Relativity, including the metadata field revealing which documents came from DocStar— which Plaintiff does not deny.  *See* Doc. 81, MIS of Motion To Compel at p. 12 n.9; Ex. 82-7.

Defendants have also spent hours analyzing the 83-page inventory, which was represented to include all of the Bank's hardcopy documents, and have discussed the same with witnesses—all in an attempt to determine which of the 110 boxes might contain loan files, loan packages, underwriting materials, and original documents effectuating the loans.  This effort was in vain because, as Defendants were first informed on August 8, 2012, Plaintiff cherry-picked

13

documents to retain and thus the inventory is incomplete; no entries on the inventory appear to be the relevant files.

In fairness, all of these expenses should be borne by Plaintiff. *See Quinby v. WestLB AG*, 245 F.R.D. 94, 104-105 (S.D.N.Y. 2006) (a party cannot shift the cost of restoring and searching data if the party created the burden or expense by converting data into an inaccessible format when it should have anticipated litigation); *Kemper Mortg., Inc. v. Russell*, 2006 WL 2319858, 2 (S.D. Ohio 2006) ("Computers have become a standard tool of doing business, with many associated benefits and costs. One of the benefits but also burdens is that it is easier to preserve a great deal of information than it was with paper systems. One of the unexpected costs of using the electronic tool is that it may become costly to abide by one's duty to preserve evidence, but that is not a cost which can be shifted to the opposing party[.]"). They were incurred due to Plaintiff's conduct after it anticipated litigation against the Bank's directors and officers[7] and would not have been incurred if Plaintiff had simply maintained the loan files as they existed in the Bank, including in DocStar,[8] or if Plaintiff had accurately represented what it had collected

---

[7] Plaintiff contends that "there is no case authority" that will support a finding that Plaintiff reasonably anticipated that litigation was likely on the date Columbian closed. Doc. 90, Resp. at p. 16 n. 8. But Plaintiff does not—and cannot—deny as a matter of *fact* it anticipated litigation no later than that date. Specifically, Plaintiff does not dispute that, on the day the Bank closed, it presented Vice President Mark McCaffree a letter purporting to give notice of potential claims against the directors and officers of the Bank. Other documents, such as the notification of potential claims Plaintiff sent to the Bank's directors and officers liability insurance carrier a mere six days after the Bank closed, also exist and prohibit Plaintiff from now denying that litigation was anticipated.

[8] Plaintiff contends that there is no statutory requirement for the FDIC, as a receiver, to maintain and pay for Bank's document management system after the FDIC is appointed receiver. While there may be no statutory requirement for the FDIC as a *receiver* to do so, a potential *litigant* is required to preserve evidence, even if it costs money to do so. Doc. 81 at pp. 15-16 & n. 12; *see also Bowens v. Columbus Metropolitan Library Bd. of Trustees*, 2010 WL 3719245, 2 (S.D. Ohio 2010) ("[T]he duty of preservation—which arises when a party knows that litigation is likely—imposes a cost that is not insubstantial[.]"). This is especially the case given the

14

and inventoried from the Bank and had not disabled features and suppressed metadata fields in Relativity.

Defendants are also entitled to their costs and fees incurred in bringing this Motion under Fed. R. Civ. P. 37(a)(5)(A). Plaintiff contends that an award of the costs and fees Defendants incurred in bringing this Motion is not justified because it already agreed to provide the documents and information requested by Defendants. Doc. 90, Resp. at p. 19. But what good is a promise if Plaintiff does not follow through on it? Fees and expenses for the necessity of this Motion are as justified as for a motion to compel seeking to extract wrongfully withheld information. *See Gonzales v. City of Albuquerque*, 2010 WL 553308, 11-12 (D.N.M. 2008) (awarding the plaintiff fees and expenses incurred in preparing and prosecuting a motion to compel when the motion was filed two weeks after the defendant agreed, but failed, to supplement its discovery responses); *see id.* *11 (rejecting the defendant's contention that the motion to compel was "premature because the parties had agreed that the Defendants would provide supplemental responses."). Plaintiff has offered no reason, much less "substantial justification," for its continuing, prejudicial delay in complying with its discovery obligations. *See* Fed. R. Civ. P. 37(a)(5)(A) (stating that the court *must* require the party whose conduct

---

magnitude of damages sought by Plaintiff and the critical importance the precise contents of the relevant files serve to Plaintiff's allegations. *Cf. Quinby v. WestLB AG*, 245 F.R.D. 94, 104 -105 (S.D.N.Y. 2006) (stating that, "a responding party should not be required to pay for the restoration of inaccessible data if the cost of that restoration is significantly disproportionate to the value of the case. Assuming this to be a multi-million dollar case, the cost of restoration is surely not 'significantly disproportionate' to the projected value of this case. This factor weighs against cost-shifting."); *Cyntegra, Inc. v. Idexx Laboratories, Inc.* 2007 WL 5193736, 5 (C.D. Cal. 2007) ("Because Plaintiff could have anticipated the possibility of litigation by this time, it had an affirmative duty to make payments [to a third party that hosted electronic documents] and preserve the evidence."). Moreover, "Plaintiff has made no showing that the costs to save the information [whether by maintaining the contract with DocStar or by another mechanism] was prohibitive" or even burdensome. *Id.*

necessitated a motion to compel pay fees and expenses incurred in bringing the motion unless, among other reasons, the opposing party's nondisclosure was "substantially justified").

For the foregoing reasons, Defendants request the Court enter an order granting Defendants' Motion to Compel as stated herein and in their Memorandum In Support.

Respectfully submitted,

/s/ Lyndsey J. Conrad
Michael Thompson          D. Kan. # 70196
Angela Harse              KS # 21485
Lyndsey J. Conrad         KS # 23527
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO  64112
Tel:  816-983-8000
Fax:  816-983-8080
michael.thompson@huschblackwell.com
lyndsey.conrad@huschblackwell.com

*Attorneys for Carl and Sam McCaffree*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2012, a copy of the foregoing was filed electronically with the above captioned court, with notice of case activity to be generated and sent electronically by the Court's CM/ECF system to all counsel of record.

/s/ Lyndsey J. Conrad