## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| FEDERAL DEPOSIT | ) | |
| INSURANCE CORPORATION | ) | |
| *as Receiver of The Columbian Bank* | ) | |
| *and Trust Company*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2447-JAR |
| | ) | |
| CARL L. McCAFFREE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the court upon Defendants Carl McCaffree's and Sam McCaffree's Motion to Compel (ECF No. 80). After the McCaffrees' motion to compel had been fully briefed, both the McCaffrees and the Federal Deposit Insurance Corporation, as receiver of the Columbian Bank and Trust Company (FDIC-R) began filing additional briefs without leave of the court. The briefs provided additional factual information about the discovery dispute before the court. The briefs also updated the court about which parts of the motion to compel were now moot or potentially moot because the FDIC-R had complied with the McCaffrees' requests. But the briefs also contained additional arguments and disputed positions.

The seven briefs now pertaining to this motion to compel have complicated and prolonged the task of resolving the McCaffrees' motion. After reviewing all of the filings, it is unclear what, if any, of the discovery dispute remains left to resolve. While the court appreciates and encourages litigants to work together to resolve discovery disputes—even after a party files a motion to compel—the manner in which the McCaffrees and the FDIC-R have chosen to update the court has been less than helpful. In the future, if the parties wish to file additional briefs, they

shall first seek leave of the court. If they wish to inform the court that a portion of a motion to compel is now moot, they shall do so through an additional joint filing that clearly outlines which portions of the dispute the parties' have resolved. Given the briefing on the motion to compel, the court realizes that this memorandum and order may rule on issues the parties have resolved. With these considerations in mind, the court turns to the motion to compel, which is granted in part and denied in part for the reasons stated below.

## I.       Procedural Conference Requirement

The Federal Rules of Civil Procedure and this district's local rules require a moving party to confer with opposing counsel about the discovery dispute at issue before filing a motion to compel.[1] In this case, both parties have attached correspondence to their motion that memorializes efforts to resolve or narrow this discovery dispute. The court finds that Carl McCaffree and Sam McCaffree have satisfied the procedural conference requirements.

## II.      Background

FDIC-R, brings this action against former directors and executive officers of the Columbian Bank, alleging the bank suffered losses in excess of $56 million as a result of the defendants' negligence, gross negligence, and breach of their fiduciary duties regarding the approval of 20 large commercial loans.[2] The present discovery dispute concerns the FDIC-R's obligations in storing, maintaining, retrieving, and producing in discovery documents obtained from Columbian Bank at the time it was closed.  At the outset of the discovery phase, the FDIC-R and the remaining defendants—Carl L. McCaffree, Sam McCaffree (the McCaffrees) and

---

[1] Fed. R. Civ. P. 37(a)(1); D. Kan. Rule 37.2.

[2] *See generally* Am. Compl., ECF No. 58.

Jimmy D. Helvey—reached an agreement about how electronically stored information (ESI)

would be produced. The scheduling order memorializes the agreement. It states in relevant part,

> The FDIC has compiled a database of approximately 3.7 million electronically stored documents. These include documents the FDIC obtained from the bank, including documents that were stored on Columbian's file server and the desktop computers of a number of bank employees and scanned documents. In addition, the database includes documents the FDIC subpoenaed from borrowers following the closing of the bank. The FDIC has organized the documents into folders by using search terms, such as the names of the directors and officers of Columbian, the loans referenced in the complaint, and other relevant search terms. After removing duplicate copies of documents, this process has reduced the number of relevant, or potentially relevant, documents to approximately 60,000, divided into folders based upon search terms. Defendants' counsel have been provided with a list of the search terms used by the FDIC to prepare the folders.

> The parties have agreed that defendants will provide plaintiff with any additional search terms they wish to have applied to the entire database of documents. Unless objected to, additional folders will be prepared based upon the results of those additional search terms. After this has been accomplished, a third-party web hosting service, will make all the folders available for defendants' counsel to review online using a Web-based service known as Relativity. The parties have agreed to share jointly Relativity's monthly charges. Copies will be made of documents selected by defendants except for documents that plaintiff believes are privileged. Any such documents will be listed by plaintiff on a privilege log and will not be produced to defendants unless so ordered by the court. All other documents selected by defendants will be number-stamped and will contain language reciting any confidentiality requirements and restrictions imposed by the court.[3]

To understand the context in which this dispute arises, a brief discussion of the Columbian

Bank's filing systems and the FDIC-R's efforts in preserving and producing these documents is

necessary.

### A.      Columbian Bank's Filing Systems

---

[3] Scheduling Order at 4-5, ECF No. 35.

According to the declaration of Mark McCaffree, who served as the vice president of Columbian Bank and sat on its board of directors, the bank utilized a dual-filing system for its loans.[4] Most loan-related documents were maintained in hard-copy form in a central file at the bank branch where the loan originated. Columbian Bank would also use an electronic document management system called DocStar to store scanned copies of loan documents. The bank's general practice was to scan all documents in the hard-copy files and then save them into DocStar. But at various points in time, the DocStar files could be incomplete if certain documents had not yet been scanned and saved or if certain documents were inadvertently omitted.

Mark McCaffree's declaration also states that Columbian Bank maintained a "loan file" for each of its loans. The loan file was stored both within the hard-copy system and within DocStar. In DocStar, an electronic file bearing the borrower's name would contain individual subfolders for each loan. Generally, these subfolders were named by the loan number. If the borrower had more than one loan at the bank, the bank would also maintain a "master file" containing documents relevant to all of the loans. The bank did this to avoid duplicate documents appearing in each of the respective loan subfolders. Therefore, if there was a master file in existence, the respective loan subfolders likely would not contain all of the records pertinent to those loans.

**B.    The FDIC's Efforts to Capture, Store, and Produce Documents**

On August 22, 2008, the Office of the State Bank Commissioner of Kansas closed Columbian Bank and appointed the FDIC as receiver of the bank pursuant to 12 U.S.C. § 1821.[5]

---

[4] Decl. of Mark McCaffree in Supp. of Defs. Carl McCaffree's and Sam McCaffree's Mot. to Compel at 1, ECF No. 82-10.

[5] Pl.'s Mem. in Opp'n to Defs. Carl and Sam McCaffree's Mot. to Compel at 3, ECF No. 90.

After its appointment, the FDIC-R contracted with Deloitte and Lockheed Martin to help capture the bank's ESI. The FDIC-R says that its Division of Resolutions and Receivership investigation team collected 110 boxes of documents from the bank and inventoried their contents. The contents of the boxes were electronically scanned.

Throughout this case, Lockheed Martin uploaded and continues to upload documents from Columbian Bank, which are stored in a database called Relativity. According to the FDIC-R, Lockheed Martin manages Relativity, processes information, and retrieves documents and other information requested by the parties. Additionally, Lockheed Martin has provided training on Relativity to the McCaffrees' defense counsel, legal assistants, and other employees at counsel's law firm. Lockheed Martin has also provided training to counsel representing co-defendant Jimmy Helvey.

The FDIC-R produced to defendants the inventory of the 110 boxes of documents obtained from the bank by the FDIC-R or its contractors. The FDIC-R states that while all of the contents of the boxes were scanned, only some of the electronically imaged contents of the boxes were uploaded to Relativity. The same is true of other documents and information in the FDIC-R's possession. The documents uploaded to Relativity were those that contained one or more of the parties' agreed upon search terms. The inventory provided to defendants specified which documents or files within the boxes were uploaded to Relativity. The FDIC-R also invited defendants to designate additional boxes, files, or documents they would like uploaded to Relativity, but the FDIC-R says that defendants did not select any additional materials. According to the FDIC-R, Lockheed Martin activated a feature on Relativity that should allow

defendants to view the entire contents of each box on the inventory list that was uploaded to Relativity, just as those documents were arranged in the original hard copy files.[6]

### C.      Problems with Production

After agreeing to utilize Relativity and splitting the cost with the FDIC-R for maintaining Relativity, the McCaffrees claim they have uncovered shortcomings with the system. For one, the McCaffrees contend that critical documents were missing from what was produced as "the complete 'loan package' or 'loan file' . . . that was presented to the Loan Committee and/or Board of Directors at the time [of] approval of the loan, loan renewal, or loan consolidation."[7] The McCaffrees contend that a loan package presented to the board for approval would include a document titled "Loan Approval Request" or "LAR," in addition to other supporting documents relevant to obtaining loan approval. Sometimes the Loan Approval Request forms would reference additional supporting documents presented as part of the loan package, but not always. Some Loan Approval Request forms produced during discovery would note supporting materials—such as a packet of information concerning a borrower or a listing of tenants who signed attached letters.[8] But the McCaffrees say these supporting materials were not produced. The McCaffrees fear that other documents not specifically referenced in the Loan Approval Request forms are not capable of being identified and produced in Relativity, and therefore, the McCaffrees lack the universe of documents that would provide a complete picture of what documents were presented to the board regarding loan approval. The FDIC-R argues that the McCaffrees lack any proof that these documents were actually presented to the board when the

---

[6] Pl.'s Mem. in Opp'n to Defs. Carl and Sam McCaffree's Mot. to Compel at 8, ECF No. 90.

[7] Defs. Carl McCaffree's and Sam McCaffree's Mot. to Compel at 8, ECF No. 81.

[8] *Id.* at 9.

defendants approved the loans. Alternatively, the FDIC-R states that if these documents referenced in the Loan Approval Forms  were presented to the board, it is possible that the bank's employees removed certain documents from the files prior to the time of closing, when the FDIC assumed control over the bank. In any event, the FDIC-R contends that if these documents exist, they should be retrievable by defendants in Relativity.

The McCaffrees state they have also encountered problems with the way the FDIC-R has preserved and produced DocStar ESI. Because of the nature of the bank's dual-filing system, the McCaffrees anticipated that Relativity would contain at least two copies of each loan file and two copies of each master loan file—a version that existed in hard copy and a version that existed in DocStar. The McCaffrees had understood that the FDIC-R had imaged Columbian Bank's documents at the time the bank was closed. But they say that certain documents contained in the master files (that would pertain to multiple loans taken out by individual borrowers) were not produced. DocStar is a proprietary service, and the FDIC-R did not continue to contract with DocStar after the bank went into receivership. As result, the FDIC-R apparently captured documents stored in DocStar but was not able to preserve DocStar's system of organizing folders where the documents were maintained. For example, the master files stored on DocStar would not be readily accessible. But the FDIC-R contends defendants should be able to reassemble the master files by searching the DocStar documents on Relativity by the bank's loan numbers for the target files or by searching for documents containing the term "master file" combined with the name of the target loans.

In one of their supplemental briefs, the McCaffrees state that even though the FDIC-R did not maintain the DocStar system, it has come to light that the bank that purchased from the FDIC some of Columbian Bank's assets has maintained DocStar. The vice president of

operations at Citizens Bank and Trust Company, the purchasing bank, in response to an inquiry

from the FDIC-R's counsel, stated in an e-mail that, "the file structure in DocStar did not change

when Citizens took over the Columbian branches."[9] The McCaffrees also pointed out in their

memorandum in support of the motion to compel that Citizens Bank is in possession of

responsive documents, including original loan files for some of the loans at issue in this case.

They argue that the FDIC-R should be responsible for producing these documents because the

Purchase and Assumption Agreement between the FDIC-R and Citizens Bank gives the FDIC-R

the legal right to obtain Citizens Bank's records on demand. Indeed, since this motion became

ripe, the parties have filed additional briefs that state the FDIC-R has begun producing to the

McCaffrees responsive documents in the possession of Citizens Bank.

## III. Discussion

The McCaffrees contend that the FDIC-R should have reasonably anticipated litigation

against the bank's directors and/or executive officers on August 22, 2008, the day it assumed

control of the bank—the same day it presented to Columbian Vice President Mark McCaffree a

letter giving notice of potential claims against the officers and directors of the bank. Because of

this, the McCaffrees say FDIC-R was under an obligation to preserve relevant documents,

including the location and placement of these documents. The McCaffrees contend that the

FDIC-R has not lived up to its discovery obligations because it has failed to conduct a reasonable

search for all responsive documents. They point to facts suggesting the incomplete production of

documents associated with certain loans and cite problems with the means of production—for

example, the initial suppression of relevant metadata and incorrect metadata associated with

files. The McCaffrees also contend that the FDIC-R should be responsible for obtaining from

---

[9] E-mail from Larry Taft to Charles Getto at 1, ECF No. 102-2 (sealed).

another bank documents responsive to the McCaffrees' requests for production because these documents may not have been imaged by the FDIC-R at the time of the bank's closing and because the FDIC-R has the legal right to obtain these documents on demand.

After this motion became ripe, the parties, without leave of the court, filed additional briefs that containing supplemental facts and arguments. Among other things, the briefs informed the court that a number of issues raised in the McCaffrees' motion to compel are now moot. In the McCaffrees' most recent filing, they informed the court that they still seek an order requiring the FDIC-R to locate and produce all responsive documents available from Citizens Bank, and if a document is no longer available, the McCaffrees request that the FDIC-R be required to identify where the document is located and state the person or entity that has control of the document. The McCaffrees also seek an order requiring the FDIC-R to produce for inspection and copying all original Bank loan and underwriting files for the relevant loans that are in the FDIC-R's possession or control. They also seek an order requiring the FDIC-R to supplement its responses to Interrogatories Nos. 10 and 11, as it has agreed to do. It appears this portion of the motion is now moot because on November 14, 2012, the FDIC-R filed a Notice of Service that states it has served supplemental responses to these interrogatories.[10] Finally, the McCaffrees seek an award of costs and fees incurred as a result of filing this motion and incurred as a result of reviewing documents in an effort to locate loan files that were not maintained in the Relativity database.

### A.    The FDIC-R's Obligations in Responding to Discovery Requests

The McCaffrees argue the FDIC-R failed to fully preserve relevant information once it reasonably anticipated litigation and that the FDIC-R has failed to respond in full to their

---

[10] *See* Notice of Service at 1, ECF No. 128.

requests for production. As to the FDIC-R's duty to preserve documents, the present record does not establish that the FDIC-R failed to preserve relevant documents, but it does raise concerns about whether the McCaffrees have received all documents responsive to their discovery requests.

### 1.    The FDIC-R's Duty to Preserve Documents

"Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."[11] This applies to "evidence that the party knew or should have known was 'relevant to imminent or ongoing litigation.'"[12] But a litigant is not required to keep or maintain every document in its possession.[13]

There is nothing in the present record that establishes the FDIC-R failed to properly preserve documents and evidence. It appears the FDIC-R captured the vast majority, if not all, of the evidence and documents the FIDC-R knew or should have known were relevant to litigation at the time when it assumed control of the bank and began efforts to image the bank's files. And the McCaffrees have not pointed to any authority that establishes the FDIC-R was under a duty to maintain Columbian Bank's filing system in the same manner Columbian Bank maintained it. The FDIC-R, unlike most litigants, was also in the unique position of preserving another entity's documents. The fact that the FDIC-R perhaps failed to image certain bank employees' computer hard drives is not itself evidence that the FDIC-R failed to properly preserve documents given

---

[11] *School–Link Techs., Inc. v. Applied Res., Inc.*, No. 05–2088–JWL, 2007 WL 677647, at *3 (D. Kan. Feb. 28, 2007) (quoting *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y.2003)).

[12] *Pouncil v. Branch Law Firm*, No. 10-1314-JTM-DJW, 2012 WL 777500, at *5 (D. Kan. Mar. 7, 2012) (quoting *School-Link Techs*., 2007 WL 677647, at *3).

[13] *Zubulake*, 220 F.R.D. at 217.

what the FDIC-R would have likely known at the time. For example, it would be reasonable to expect that the majority of documents pertaining to the loans at issue would be maintained in the bank's loan files. If pertinent documents existed on employee hard drives, it would also be reasonable to assume that the bank would place those documents in the loan files as well.

The bulk of the remainder of the discovery issues the McCaffrees address appear to have more to do with the method of production of ESI. But the court is faced with conflicting information on this point. For example, the McCaffrees detail the difficulties they have encountered in attempting to locate responsive documents and replicating certain files. But the FDIC-R says the McCaffrees should be able to do this. So, while this is insufficient for a finding that the FDIC-R failed to properly preserve evidence—at least based on the present record—it is also good reason, as explained below, to require the FDIC-R to supplement its production.

**2.    The FDIC-R's Duties in Responding to Discovery Requests**

As for the FDIC-R's obligations in responding to the McCaffrees' discovery requests, the McCaffrees have come forward with some evidence suggesting the FDIC-R failed to produce responsive documents. This seems more a result of the large quantity of documents available for production and the fact that both parties believed, perhaps mistakenly, that their agreed method of production utilizing Relativity would capture all responsive documents. Nevertheless, it is the FDIC-R's duty to conduct a reasonable search for documents responsive to the McCaffrees' discovery requests in light of the fact that the McCaffrees have called into question the reliability of the parties' agreed method of production using Relativity.

Fed. R. Civ. P. 34(b)(2)(E) applies to producing documents or ESI in response to a discovery request. It states that "[u]nless otherwise stipulated or ordered by the court" the producing party "must produce documents as they are kept in the usual course of business or

must organize and label them to correspond to the categories in the request[.]"[14] The McCaffrees selectively cite to the usual-course-of-business provision—while omitting the remainder of the quotation—to argue that the FDIC-R failed to fulfill its discovery obligations because it has not maintained Columbian Bank's documents as they were kept in the usual course of business by Columbian Bank. But as the rule plainly states, this is just one method of production.[15] It does not require a responding party to produce documents in this manner exclusively, and it certainly does not address whether the FDIC-R had a duty to preserve Columbian Bank's filing system, particularly when this undertaking would have required the FDIC-R to continue to contract with a proprietary document management service.

Here, the parties agreed to a specified method of production of ESI.[16] This agreement did not relieve the FDIC-R of its duty to conduct a reasonable search for responsive documents and information.[17] But the FDIC-R believed, and still maintains, that all responsive information has been produced and that it has discharged, and in fact exceeded, its obligations in responding to the McCaffrees' discovery requests. Moreover, it appears that the parties understood that

---

[14] Fed. R. Civ. P. 34(b)(2)(E)(i).

[15] The McCaffrees devote an additional portion of their brief to arguing the FDIC-R has not maintained the documents as they were kept in the usual course of Columbian Bank's business. The McCaffrees rely on case law addressing what it means to produce documents as they were kept in the usual course of business. *See SEC v. Kovzan*, No. 11-2017-JWL, 2012 WL 3111729, *9 (D. Kan. July 31, 2012) (opining that the producing party must provide some level of guidance to the discovering party when production involves a large, disorderly mass of documents), *overruled in part on other grounds*, 2012 WL 4819011 (D. Kan. Oct. 10, 2012); *United States v. O'Keefe*, 537 F. Supp. 2d 14, 23-24 (D.D.C. 2008) (looking to the Federal Rules of Civil Procedure for guidance in a criminal case and addressing issues with production of documents as they are kept in the usual course of business). Those cases are distinguishable because in this litigation, the parties have agreed to another method of production. Moreover, neither those cases nor the Federal Rules of Civil Procedure stand for the proposition that a producing party is required to produce documents as they are kept in the usual course of business—or the proposition that maintaining documents as they are kept in the usual course of business would require the FDIC-R to maintain documents in the exact manner in which they were organized at Columbian Bank.

[16] *See* Scheduling Order at 4-5, ECF No. 35.

[17] *See Hock Foods, Inc. v. William Blair & Co., LLC*, No. 09-2588-KHV, 2011 WL 884446, at *8 (D. Kan. Mar. 11, 2011) ("The Federal Rules require a party to conduct a reasonable search for responsive information.").

documents available through Relativity would be produced through Relativity and not necessarily separately produced in hard copy.[18] This was also the court's understanding when it conducted the scheduling conference in this case.

But while the FDIC-R may have complied with the spirit of the parties' agreement regarding production of ESI, it is likely that production in this manner has been incomplete and also fraught with problems. As detailed in background section, the McCaffrees have encountered multiple issues with the Relativity database that has made the search for relevant documents cumbersome. Also troubling is that certain documents referenced in some of the Loan Approval Request forms were not produced as part of the complete loan packages presented to the board for approval. The FDIC-R points out that it is possible that these documents were not part of the file at the time it seized control of the bank. However, given the nature of the problems with Relativity, it appears just as likely, if not more so, that these documents were not properly identified as responsive and therefore not produced. The McCaffrees also say that master files pertaining to multiple loans have not been fully produced, and the McCaffrees contend they have not received two copies of each of the loan files for the loans issue in this case—both the hard-copy version and the DocStar version. And they say they are missing underwriting documents.

Generally, when a party responding to discovery requests states that it has fully responded, the court will not compel further responses unless the moving party has presented

---

[18] The McCaffrees attached to their motion the FDIC-R's responses to their discovery requests, which specifically reference Relativity documents. *See generally* Pl.'s Resps. To Defs. Carl McCaffree and Sam McCaffree's Reqs. for Produc. Of Docs., ECF No. 82-2. The McCaffrees did not attach their original discovery requests, which would provide information about whether they specified that documents should be produced in hard-copy format in addition to the electronic production. The party propounding discovery requests typically specifies the form or forms of production. *See* Fed. R. Civ. P. 26(b) advisory committee's note to the 2006 amendments (stating that the party requesting ESI may designate the form or forms in which it should be produced and noting that specifying the forms of ESI is more important than when a party requests hard-copy documents but also stating that a party may specify hard copy as the requested form).

information that calls into question the veracity of the responding party's representation.[19] In this case, the court believes the FDIC-R's statements are made in good faith but also recognizes that the McCaffrees have presented evidence that shows problems associated with Relativity that have likely resulted in responsive documents not being produced. Because of these problems, there is good reason to require the FDIC-R to supplement its production to the extent additional responsive documents exist that have not been previously produced. Because the FDIC-R believes it has fully responded, the court will provide some guidance as to what additional steps the FDIC-R should take.

The majority of the problems the McCaffrees cite pertain to various loan packages, loan files, underwriting documents, and documents associated with the board's loan-approval process, including minutes memorializing board meetings and documents presented to the board. The McCaffrees' discovery requests, however, encompass other categories of documents. For example, some requests seek information that may or may not be contained in Relativity, such as requests for materials provided to or prepared by an expert in anticipation of the expert's testimony.[20] Other requests seek more narrow categories of documents, such as documents sufficient to show the formation of Columbian Bank, documents to identify bank locations, the bank's operational documents, documents showing the bank's organizational structure, and the like. Because the McCaffrees have not referenced specific problems with regard to production of these types of documents, the court will not compel the FDIC-R, at this time, to supplement its production to these types of discovery requests.

---

[19] *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 639 (D. Kan. 2004) (denying a motion to compel as to discovery requests to which the defendant stated it had fully responded).

[20] Pl.'s Reps. to Defs. Carl McCaffree and Sam McCaffree's Reqs. for Produc. of Docs. at 4, ECF No. 82-2.

Because the McCaffrees have come forward with evidence suggesting the FDIC-R has made an incomplete production as to documents related to the loans at issue in this case, information presented to the board, information generated from board meetings, or the board's loan-approval process, the FDIC-R is ordered to conduct a reasonable search to locate and produce additional responsive documents to the extent additional responsive documents exist. These include Request for Production Nos. 14-18, 20, 24, 36-47, 49-79, 82, and 83. Additionally, if any responsive documents or files are not within the FDIC-R's possession, custody, or control, the McCaffrees ask the court to order the FDIC-R to state the disposition of the document, including where it is currently located and the identity of the person or entity that has possession, custody, or control. If the McCaffrees seek this information, they are free to serve a discovery request on the FDIC-R. The court declines to compel more than what the McCaffrees sought in their discovery requests.[21]

When the FDIC-R is conducting a search for additional responsive documents, it is required to search and produce all documents within its custody, possession, or control.[22] "[D]ocuments are deemed to be within the possession, custody, or control if the party has actual possession, custody, or control or has the legal right to obtain the documents on demand."[23] This means the FDIC-R must not only search its own files but also gather responsive documents from other entities from which the FDIC-R retains the legal right to obtain documents on demand.

---

[21] *See Stouder v. M&A Tech., Inc.*, No. 2011 WL 673763, at *3 (D. Kan. Feb. 17, 2011) (stating that the court will not compel parties to produce more than what was specifically sought in the discovery requests).

[22] Fed. R. Civ. P. 34(a)(1).

[23] *Noaimi v. Zaid*, --- F.R.D. ---, 2012 WL 1788135, at *2 (D. Kan. 2012) (emphasis omitted) (citing *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 517 n.14 (D. Kan. 2007)).

However, the party seeking production has the burden to show the producing party has the requisite control over the documents[24]

The McCaffrees have produced the FDIC-R's Purchase and Assumption Agreement with Citizens Bank, which gives the FDIC-R the legal right to obtain certain documents from Citizens Bank. Article VI of the Agreement applies to records. Among other things, subsection 6.3 requires the assuming bank to maintain "all Records of which it has in its custody for such period as either the Receiver or the Corporation in its discretion may require, until directed otherwise, in writing, by the Receiver or Corporation."[25]  "Records" is defined as "any document, microfiche, microfilm and computer records (including but not limited to magnetic tape, disc storage, card forms and printed copy) of the Failed Bank generated or maintained by the Failed Bank that is owned by or in the possession of the Receiver at the Bank Closing Date."[26] Subsection 6.4 governs access to records and copies. It provides,

> The Assuming Bank agrees to permit the Receiver and the Corporation access to all Records of which the Assuming Bank has custody, and to use, inspect, make extracts from or request copies of any such Records in the manner and to the extent requested, and to duplicate, in the discretion of the Receiver or the Corporation, any Record in the form of microfilm or microfiche pertaining to Deposit account relationships; . . . The party requesting a copy of any Record shall bear the cost (based on standard accepted industry charges to the extent applicable, as determined by the Receiver) for providing such duplicate Records. A copy of each Record requested shall be provided as soon as practicable by the party having custody thereof.[27]

---

[24] *See id.* at *2.

[25] Purchase and Assumption Agreement at 32, ECF No. 82-9.

[26] *Id.* at 11.

[27] *Id.* at 32.

The FDIC-R does not contest that it has the legal right to obtain certain documents from Citizens Bank. From the face of the agreement, it is clear that the FDIC-R does retain the legal right to obtain copies of some documents responsive to the McCaffrees' discovery requests, and in fact, after this motion was fully briefed, the FDIC-R produced to the McCaffrees certain documents maintained by Citizens Bank. But based on the present briefing, the court is not convinced that the agreement gives the FDIC-R the right to obtain from Citizens Bank original files for the McCaffrees to inspect, and the court is not convinced the agreement gives the FDIC-R unfettered access to the DocStar electronic storage system maintained by Citizens Bank.

Other than pointing the court to selected provisions of the 56-page Purchase and Assumption Agreement, the McCaffrees have not discussed in detail the scope of what they believe the agreement entitles the FDIC-R to obtain. The McCaffrees have suggested they themselves are entitled to inspect and copy original loan and underwriting files for the loans at issue in this case. To the extent the FDIC-R has in its possession original loan and underwriting files, this would be permissible.[28] However, to the extent original files are in the possession of other banks, the McCaffrees have not shown the FDIC-R has the legal right to obtain *original* files for the McCaffrees to inspect. That is not to say that the agreement does not give the FDIC-R this authority; the court only concludes that as the party seeking production, the McCaffrees have not carried their burden to show how the agreement allows the FDIC-R to obtain original files to produce to the McCaffrees for inspection and copying.

The same is true of documents maintained by Citizens Bank in DocStar. Issues regarding DocStar may in fact be moot at this juncture. The McCaffrees say that it appears the FDIC-R has

---

[28] For example, the if the FDIC-R still has the original files associated with the Lockhaven Estates loan, the McCaffrees should be entitled to inspect and copy these documents.

produced DocStar documents maintained by Citizens Bank.[29] However, to the extent the McCaffrees seek an order compelling the FDIC-R to obtain DocStar documents from Citizens' Bank, that request is denied. The parties have not specifically briefed the issue of whether the FDIC-R has the requisite control for the court to require it to obtain DocStar documents in the custody of Citizens Bank. That is not to say this information would not necessarily be discoverable, but the proper mechanism to obtain this information could very well be for the McCaffrees to subpoena these documents from Citizens Bank. Given that a nonparty's rights could be implicated, the court will not require the FDIC-R to obtain original loan files from Citizens Bank for the McCaffrees to inspect and copy, and the court will not require the FDIC-R to produce DocStar documents maintained by Citizens Bank—at least not without a significantly more detailed briefing on the scope of the FDIC-R's legal right to obtain original documents from Citizens Bank. The court, however, does require the FDIC-R to produce *copies* of responsive documents that the FDIC-R has a legal right to obtain from Citizens Bank. If the FDIC-R has the legal right to obtain additional responsive documents from other nonparties who purchased the loans at issue in this case, the FDIC-R shall also include copies of those documents in its supplementation. The court notes that the FDIC-R already informed the McCaffrees it will endeavor to obtain copies of the loan files from the purchasers of the target loans—including those maintained by Citizens Bank—and in many cases, the FDIC-R has already produced this information.[30]

### B.     Costs and Attorney Fees

---

[29] Defs. Reply to FDIC-R's Resp. to Notice of Supp. Facts and Addendum to the Mot. to Compel at 4, ECF No. 121.

[30] *See id.* at 5; *see also* Pl.'s Mem. in Opp'n to Defs. Carl and Sam McCaffree's Mot. to Compel at 12, 15, ECF No. 90.

The McCaffrees request that the court award them costs and attorney fees incurred as a result of filing this motion to compel and costs and fees incurred as a result of reviewing documents in an effort to locate files that were not maintained in the Relativity database. Both requests are denied. The court has not granted in full the McCaffrees motion to compel, and therefore, the court declines to award costs and fees.[31] While the McCaffrees' efforts to confer were sufficient to satisfy the procedural conference requirements, it appears further meet-and-confer sessions would have narrowed or clarified the scope of the remaining dispute. For example, the FDIC-R had conveyed to the McCaffrees a willingness to retrieve loan files from purchasing banks.[32] The FDIC-R had also agreed to supplement certain discovery responses. The McCaffrees could have sought additional time to confer or asked for an extension of time to move to compel—as they had done in the past—but they did not. While it is certainly the McCaffrees right to file this motion, the FDIC-R should not be required to pay their attorney fees incurred in bringing this motion when a significant portion of this motion was likely unnecessary.

The McCaffrees have encountered difficulties with the Relativity database and have made a showing that it is reasonably likely some responsive documents have not been produced. The FDIC-R, however, has maintained that its contractors have addressed all of the McCaffrees' concerns and that all responsive documents have been uploaded to Relativity. While the record is sufficient to require the FDIC-R to search for additional responsive documents, it is not sufficient to sanction the FDIC-R because of unanticipated difficulties resulting from parties' agreed method of production. There are also genuine disputes between the parties concerning

---

[31] See Fed. R. Civ. P. 37(a)(5)(C).

[32] See Pl.'s Mem. in Opp'n to Defs. Carl and Sam McCaffree's Mot. to Compel at 12, 15, ECF No. 90.

Relativity's capabilities and what documents are available through Relativity. For all of these reasons, the McCaffrees' request for costs and fees is denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants Carl McCaffree's and Sam McCaffree's Motion to Compel (ECF No. 80) is hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that within thirty (30) days from the date of this order the FDIC-R shall: (1) conduct a search for documents responsive to Requests Nos. 14-18, 20, 24, 36-47, 49-79, 82, and 83, including obtaining responsive documents from other entities to the extent the FDIC-R has the legal right to request to obtain these documents on demand; (2) to the extent additional responsive documents exist, the FDIC-R shall supplement its responses to these discovery requests; (3) to the extent the FDIC-R has in its possession original bank loan and underwriting files for the relevant loans, it shall produce them for inspection and copying.

**IT IS SO ORDERED.**

Dated this 27th day of December, 2012, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge